# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER O'DELL, INDIVIDUALLY**<br>**5453 Loof Road**<br>**Spencerville, Ohio 45887** | : <br> : <br> : <br> : | **CASE NO.** |
| | : | **Judge** |
| **CHRISTOPHER O'DELL, AS ADMINISTRATOR OF THE ESTATE OF BOBBY O'DELL**<br>**5453 Loof Road**<br>**Spencerville, Ohio 45887** | : <br> : <br> : <br> : <br> : | <br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |
| | : | |
| ***On behalf of themselves and those similarly situated,*** | : <br> : <br> : | |
| **Plaintiffs,** | : <br> : | |
| **v.** | : <br> : | |
| **PLAN ADMINISTRATOR, FORD MOTOR COMPANY HEALTH CARE PLAN**<br>**Secretary, Ford Motor Company**<br>**One American Road**<br>**Dearborn, Michigan 48126** | : <br> : <br> : <br> : <br> : <br> : | |
| **FORD MOTOR COMPANY HEALTH CARE PLAN**<br>**Secretary, Ford Motor Company**<br>**One American Road**<br>**Dearborn, Michigan 48126** | : <br> : <br> : <br> : <br> : | |
| **VENGROFF WILLIAMS, INC.**<br>***Serve*: Kevin L. String**<br>**23 N. Franklin Street, Suite 11**<br>**Chagrin Fall, Ohio 44022** | : <br> : <br> : <br> : <br> : | |
| **Defendants.** | : <br> : | |

{05528017-1 }                                                  1

Plaintiffs Christopher O'Dell, individually, and Christopher O'Dell, as Administrator of the Estate of Bobby O'Dell (collectively, "Plaintiff"), brings this action against Ford Motor Company Health Care Plan (the "Plan"), the Plan's Administrator (the "Administrator"), and Vengroff Williams ("Vengroff") (collectively, "Defendants"), on behalf of themselves and all those similarly situated.

## INTRODUCTION AND UNDERLYING FACTS

1.      The American people have made a deal with healthcare. In exchange for having access to the very best and most innovative healthcare in the world, the average American has no idea how the healthcare system works. He or she obtains healthcare insurance (voluntarily or by necessity), and at some point in the year that follows, discovers how much the healthcare provider decided to charge them, how much their insurer decided to pay for, and how much they owe.

2.      The latter two discoveries are at stake in this case.

3.      The amount paid by the insurer and the amount paid by the patient are usually determined according to a contract. In this case, the contract is the Handbook[1] provided to Plaintiff Chris O'Dell, individually and as executor of the estate of Bobbie O'Dell (collectively, Plaintiff), both members of the Plan (the "Contract").

4.      Often, agreements like the Contract have specific language on subrogation and/or reimbursement for the amounts the healthcare insurer paid for medical expenses. This is to allow the healthcare insurer to recoup the costs when a third-party is liable for paying those costs, such as a motor vehicle collision involving a third-party tortfeasor.

_____

[1] Attached as Exhibit 1.

5.      However, the law is clear that healthcare insurers cannot just make demands for subrogation and/or reimbursement; the contract between the healthcare insurer and patient must contain language to "identify a particular fund" from which reimbursement is to be made. Stated differently, to obtain reimbursement from a Plan participant, the contract must identify both (a) a particular fund distinct from Plaintiff's assets from which reimbursement is to be made, and (b) identify the particular share of that fund to which the healthcare insurer is entitled. The Contract does neither.

6.      Despite the clarity in law, and the blatant lack of any of these required identifications, Defendants demanded Plaintiff reimburse them for costs they paid for medical expenses related to third-party injuring Mr. O'Dell in a motor vehicle collision and for expenses paid related to Bobby O'Dell's (Plaintiff's deceased wife's) medical bills before she passed away. They repeatedly sent threatening letters demanding reimbursement after Mr. O'Dell (individually) obtained a settlement in relation to his motor vehicular collision. They did so even after counsel for Mr. O'Dell (individually) informed Defendants of the law. They would not relent, and so Mr. O'Dell finally yielded and paid Defendants $5,000. Mr. O'Dell did not sign any settlement papers or waive any claims when he remitted the $5,000 under duress.

7.      The $5,000 was paid directly to Vengroff, which remitted all or a portion of that money to the Plan, where upon information and belief it was placed in a particular fund held in the Plan's possession, and not dissipated. All of those dollars, as well as all dollars remitted by all members of the Class and Subclasses (defined below) are, upon information and belief, fully traceable to a specific fund or accounts set up and held by Defendants. All monies kept from this $5,000 by Vengroff were, upon information and belief, placed in a particular fund in Vengroff's possession.

8.      Defendants also sent Mr. O'Dell letters related to his late-wife's medical bills, and continue to do so.

9.      All of the communications stated that Defendants' "health care plans provide the right to recover any covered expense paid by the Plan for illnesses or injuries that are caused by or are the responsibility of a third party." This is false.

10.     Despite this falsity, Defendants sent Mr. O'Dell (individually) a letter stating: "There is a possibility that future benefit payments under your health care plan will be suspended until this matter is resolved." [2]

11.     Under duress, Mr. O'Dell (individually) has paid $5,000 to Defendants, which the Defendants are not entitled to. This must be disgorged. Based on Defendants' actions, including the letters demanding the same payments from Mr. O'Dell's late wife, Defendants make the same or similar demands of all members of the Plan, and will continue to do so. Based on Defendants' actions, hundreds if not thousands more members of the Plan have paid certain traceable funds to Defendants, which are then held in particular funds in Defendants' possession.

12.     Defendants' persistent and unrelenting demands for money that does not belong to them are not limited to Mr. O'Dell individually. They extend to his late wife, and upon information and belief, thousands more.

13.     Plaintiff brings this action under 29 U.S.C. § 1132(A)(3) on behalf of all members of the Plan who have provided money to Defendants upon unlawful demands for reimbursement Defendants had no legal right to, and which Defendants now hold in funds in their possession. Plaintiff also brings this action under the same section for declaratory judgment that Defendants

---

[2] This example is attached as Exhibit 2, threatening to suspend future health care benefits.

cannot seek such reimbursement, as well as a preliminary injunction prohibiting Defendants from doing so in the future, absent a re-written Contract.

## JURISDICTION

14.　　Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, this being a civil action arising under the Constitution and the laws of the United States, as well as 29 U.S.C. § 1132(e). Venue is appropriate in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred within the Northern District of Ohio.

15.　　This Court has personal jurisdiction over Defendants because 29 U.S.C. § 1132 provides for nationwide service of process, and a district court has personal jurisdiction over Defendants so long as jurisdiction comports with the Fifth Amendment. This district court's assertion of personal jurisdiction would not result in such extreme inconvenience or unfairness so as to outweigh the congressionally articulated intent to provide for personal jurisdiction throughout the nation.

## THE PARTIES

16.　　Mr. O'Dell resides in Spencerville, Ohio. He is the administrator of the estate of his late wife. The estate was opened in Ohio.

17.　　The Plan is an ERISA plan set up for the benefit of Plaintiff and the Class Members. Legal Service of the Plan is described in the Contract as care of Administrator or Agent for Service of Legal Process at Secretary, Ford Motor Company, One American Road, Dearborn, Michigan 48126.

18.     Administrator is the legal administrator of the Plan. Legal Service of the Administrator is described in the plan as Secretary, Ford Motor Company, One American Road, Dearborn, Michigan 48126

19.     Defendant Vengroff is a corporation organized under the laws of Florida with its principal place of business in Florida. Vengroff is registered to do business in Ohio.

20.     Plaintiff is a participant in the Plan.

21.     The Plan is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

22.     Under 29 U.S.C. § 1102, whenever a plan subject to ERISA is established, so must be a written plan instrument, referred to as a "Plan Document"[3] under ERISA. 29 U.S.C. § 1021(k)(1)(A).

23.     This Plan Document "serves the purpose of enabling beneficiaries to learn their rights and obligations at any time," as well as "lends certainty and predictability to employee benefit plans." *Orrand v. Scassa Asphalt, Inc*., 794 F.3d 556, 561 (6th Cir. 2015) (cleaned up).

24.     Plan Documents must contain "the basis on which payments are made to and from the plan." 29 U.S.C. § 1102(b)(4).

25.     The Contract, as provided by Defendants, is the Handbook.

## CLASS ACTION ALLEGATIONS

26.     Upon information and belief, the number of Plan members is in the thousands, if not tens of thousands or more.

---

[3] As noted above, to avoid confusion the Plan document is referred to in this Complaint as the Contract.

27.     Under Fed.R.Civ.P. 23(b)(2) and (b)(3), Plaintiff bring this suit on behalf of themselves, and a class (the "Class") defined as follows:

> All persons who, during the maximum period of time permitted by law, were or are members of the Plan.

28.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Mr. O'Dell, individually, also brings this suit on behalf of themself and a sub class ("Subclass A") defined as follows:

> All persons who, during the maximum period of time permitted by law, were or are members of the Plan and paid monies to Defendants upon Defendants' unlawful demand for reimbursement under the Contract.

29.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Mr. O'Dell, individually, also brings this suit on behalf of themself and a sub class ("Subclass B") defined as follows:

> All persons who, during the maximum period of time permitted by law, were or are members of the Plan and paid monies to Defendants upon Defendants' unlawful demand for reimbursement under the Contract, through Defendant Vengroff.

30.     Plaintiff specifically excludes Defendants, their officers, directors, legal representatives, successors, subsidiaries, parent entities, or predecessors; class counsel and their employees; and the judicial officers and their associated court staff assigned to this case from the proposed Class and Subclasses.

31.     The definitions of the Class and Subclasses are unambiguous, and Plaintiff is a member of the Class and Subclasses he seeks to represent.

32.     Plaintiff reserves the right to amend or modify the Class and Subclasses definitions to create greater specificity, division into additional subclasses, or limit to particular issues as this case progresses.

33.     The Class and each Subclass is so numerous and dispersed that joining all Class members would be impracticable. The exact number of Class or Subclass members for each Class or Subclass is unknown at this time and can only be ascertained through appropriate discovery, but is assumed to number in the thousands.

34.     Plaintiff's claims are typical of the Class because Plaintiff and the Class members all have the same interest in Defendants not unlawfully demanding money that Defendants have no legal right to from Plaintiff and the Class members. Plaintiff's claims have the same essential characteristics as all other Class members' claims and the evidence to establish the facts and claims stated herein will be the same for the Plaintiff and other members of the Class. All claims are based on the same course of conduct and similar legal theories. All Class members possess the same interests in pursuing the case as Plaintiff. A single resolution of these claims would be preferable to a multiplicity of similar actions.

35.     Plaintiff's claims are typical of the Subclasses because Plaintiff has paid traceable money unlawfully demanded by Defendants. Plaintiff's claims have the same essential characteristics as all other Subclasses members' claims and the evidence to establish the facts and claims stated herein will be the same for the Plaintiff and other members of the Subclasses. All claims are based on the same course of conduct and similar legal theories. All Subclasses members suffered the same type of injury and possess the same interests in pursuing the case as Plaintiff. A single resolution of these claims would be preferable to a multiplicity of similar actions.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and Subclasses and has retained counsel competent and experienced in class action litigation.

37.    Defendants have acted or refused to act on grounds generally applicable to the Class and Subclasses, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole.

38.    Common questions of law and fact exist as to Class members' and Subclasses members' claims and predominate over questions affecting only individual Class and Subclass members. Common legal and factual questions include, but are not limited to:

     a.    Whether Defendants are entitled to any reimbursement under the Contract;

     b.    Whether Defendants' misleading statements or omissions caused them to receive money they would not have received absent those statements or omissions;

     c.    Whether Subclass members are entitled to restitution, and/or other equitable monetary relief;

     d.    Whether the issues in the case should be addressed on a class basis.

39.    Resolution of each of these issues will turn upon evidence common to all Class and Subclass members.

40.    Resolution of issues common to all Class and Subclass members will predominate over individual issues.

41.    The issues common to the Class and the nature of the common relief create a cohesive class for injunctive relief.

42.    The issues common to the Subclasses and the nature of the common relief create cohesive classes for equitable monetary relief.

43.    Treating this case as a class action rather than attempting multiple individual actions provides a superior method for the fair and efficient adjudication of this controversy because:

a. It will avoid a multiplicity of suits and consequent burden on the courts and Defendants;

b. Joinder is impracticable;

c. It will ensure uniform application of the laws and a single, uniform decision across the board without sacrificing procedural fairness or bringing about other undesirable results;

d. It will provide court oversight of the claims process, once Defendants' liability is adjudicated;

e. It will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender; and

f. It will permit the adjudication of relatively small claims by certain Class and Subclass members, who could not afford to individually litigate such claims against a large corporate defendant.

44.    Plaintiff and the proposed Classes satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

45.    Plaintiff is not aware of any difficulties that are likely to be encountered in managing this action that would preclude its maintenance as a class action.

## COUNT I: DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

46.    Plaintiff hereby incorporates all other paragraphs in this in this Class Action Complaint as if fully rewritten and restated here

47.     Plaintiff requests this Court issue an order declaring that by engaging in the conduct described herein, Defendants have committed, and continue to commit, unlawful actions in violation of ERISA and common law.

48.     Plaintiff can show a substantial likelihood of success on the merits of its claims.

49.     Irreparable harm is caused by the emotional toll of Class members being told that they have to pay money to Defendants that they did not need to pay, and by Defendants' harassing techniques to obtain this money.

50.     Issuing an injunction would not cause harm to Defendants or third parties.

51.     The public interest would be served by the injunction.

52.     Plaintiff requests the Court enjoin Defendants from continuing to commit the unlawful acts described herein.

53.     Plaintiff requests the Court issue an order enjoining Defendants from seeking money Defendants do not have a right to under the Contract, and requiring Defendants to issue notice to all Class members that, under the Contract, Defendants do not have a right to reimbursement of costs they paid for injuries caused by third parties.

## COUNT II: UNJUST ENRICHMENT AGAINST THE PLAN

54.     Plaintiff hereby incorporates all other paragraphs in this Class Action Complaint as if fully rewritten and restated here.

55.     Plaintiff and Subclass A members paid monies to the Plan. Upon information and belief, those monies are traceable.

56.     The Plan continues to actually and/or constructively possess and/or use those monies received from Plaintiff and Subclass A.

57. The Plan knows or should know that it is holding those monies inequitably, and that it has received a direct benefit at Plaintiff's and Subclass A's expense.

58. It would not be equitable to allow the Plan to retain the monies paid by Plaintiff and Subclass A when the Plan knows that the money was unlawfully obtained.

59. The Plan's unjust conduct was and is the proximate cause, and a substantial fact, in causing losses to Plaintiff and members of Subclass A.

## COUNT III: CIVIL LIABILITY AGAINST ADMINISTRATOR FOR FAILURE TO PROVIDE PLAN DOCUMENTS

60. Plaintiff hereby incorporates all other paragraphs in this Class Action Complaint as if fully rewritten and restated here.

61. ERISA provides that Administrator has affirmative, legal, and fiduciary duties to provide the information requested.

62. Under ERISA § 502(c) and 29 U.S.C. § 1132(c), documents required to be disclosed under Title I of ERISA must be furnished within thirty (30) days after the request or Administrator can be held personally liable for a failure or refusal to comply with this regulation with a maximum penalty of $110.00 per day.

63. On July 25, 2022, counsel for Plaintiff asked for all documentation Defendants might have to support their claim for an equitable lien against monies he received through a lawsuit with a third-party tortfeasor.

64. On or about August 17, 2022, Defendant Vengroff provided Plaintiff with the Contract, but provided no other documents.

65. On July 12, 2023, Plaintiff sent Administrator a letter requesting copies of the following documents:

a.  Copies of the Master Plan documents and Summary Plan Description (SPD) and all other Plan Documents relating to my health insurance coverage for the years 2017, 2018, 2019, 2020 and 2021.

b.  Administrative Services Contracts between the Ford Motor Company Healthcare Plan No. 520 and Blue Cross Blue Shield for the years 2017, 2018, 2019, 2020 and 2021.

c.  Copies of all contracts including, but not limited: Insurance contracts, Stop Loss Contracts, Health Insurance Contracts, Insurance Intermediary Service Contracts, collective bargaining agreements, and Administrative Services Contracts related to the Ford Motor Company Plan No. 520, serving Ohio participants for the years 2017, 2018, 2019, 2020 and 2021.

d.  Amendments to the Plan Documents for the Ford Motor Company Plan No. 520, (including, but not limited to the Summary Plan Description) for the years 2017, 2018, 2019, 2020 and 2021.

e.  Copies of the SMM (Summary of Material Modifications) statements for the years 2017, 2018, 2019, 2020 and 2021.

f.  Copies of form 5500, including all attached schedules, filed with the U.S. Department of Labor for the years 2017, 2018, 2019, 2020 and 2021.

66.     The Plan Administrator did not respond.

67.     On October 31, 2023, counsel for Plaintiff followed up with another letter demanding the same documents.

68.     To date, Administrator has refused to produce any of the documents.

**COUNT IV:  UNJUST ENRICMENT AGAINST VENGROFF WILLIAMS**

69.     Plaintiff hereby incorporates all other paragraphs in this Class Action Complaint as if fully rewritten and restated here.

70.     Plaintiff and Subclass B members paid monies to Defendant Vengroff.

71.     Defendant Vengroff continues to actually and/or constructively possess those monies received from Plaintiff and Subclass B.

72.     Defendant Vengroff knows or should know that it is holding and/or using those monies inequitably, and that Vengroff has received a direct benefit at Plaintiff's and the members of Subclass B's expense.

73.     It would not be equitable to allow Defendant Vengroff to retain the monies paid by Plaintiff and members of Subclass B when Vengroff knows that the money was unlawfully obtained.

74.     Defendant Vengroff's unjust conduct was and is the proximate cause, and a substantial fact, in causing losses to Plaintiff and members of Subclass B.

## COUNT V: CIVIL LIABILITY FOR CRIMINAL ACTION AGAINST VENGROFF WILLIAMS (R.C. 2307.60)

75.     Plaintiff hereby incorporates all other paragraphs in this Class Action Complaint as if fully rewritten and restated here.

76.     This cause of action is against Vengroff only.

77.     The following allegations and this claim do not act immediately and exclusively on the ERISA plan; they do not relate to the Plan and indeed function irrespective of the existence of the Plan. The existence of the Plan is not a critical factor in establishing Vengroff's liability under this claim. Thus, this state-law claim is not preempted by ERISA.

78.     Ohio Revised Code 2307.60 holds that anyone who is injured "in property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees…"

79.     This statute requires only that the "act" be criminal, not there be a conviction, or even a trial.

80.     "Deception" is "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).

81.     "Defraud" is to "knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B).

82.     "Deprive" has three definitions, and means any of the following:

1.   Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

2.   Dispose of property so as to make it unlikely that the owner will recover it; Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration. R.C. 2913.01(C).

83.     Any person who, "with the purpose to deprive the owner of property or services" may "knowingly obtain or exert control over either the property or services in any of the following ways" is "guilty of theft":

1.   Without the consent of the owner or person authorized to give consent;

2.   Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

3.   By deception;

4. By threat;

5. By intimidation.

R.C. 2913.02

84.     Ohio law holds that a person is guilty of extortion if, they "with purpose to obtain any valuable thing or valuable benefit…Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit." R.C. 2905.11(A)(5); (B).

85.     Ohio law also holds that a person is guilty of coercion if they, with the "purpose to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice," "Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit."

86.     By its conduct as described herein, Vengroff has committed criminal acts.

87.     By its conduct as described herein, Vengroff has caused damages to Plaintiff and Subclass B and owes compensation to Plaintiff and Subclass B, including attorneys' fees and costs.


**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, respectfully request that this Court:

(a)     Certify this case as a Class Action under Federal Rule of Civil Procedure 23 and appoint Plaintiff as the class representatives for the proposed Class and Subclasses and their counsel as Class Counsel;

(b)     Find in favor Plaintiff and the Class and Subclasses on all counts asserted herein;

(c)     Declare that Defendants' conduct was and is inequitable and unlawful;

(d)     Declare that Vengroff's conduct was illegal;

(e)     Order injunctive relief by ordering that Defendants cease and desist from continuing the conduct alleged herein;

(f)     Disgorge all monies improperly paid by members of the Subclasses to Defendants.

(g)     Award damages, including compensatory, exemplary, punitive and statutory damages against Vengroff;

(h)     Award Plaintiff and the Class and Subclass reasonable attorneys' fees and the costs and disbursements of this suit incurred herein;

(i)     Award Plaintiff and the Subclass pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

(j)     Order any such other and further relief the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby request a trial by jury on all claims triable to a jury.

Respectfully submitted,

*/s/ Zachary C. Schaengold*
Zachary C. Schaengold (0090953)
Cory D. Britt (0090896)
**ROBBINS, KELLY, PATTERSON & TUCKER**
312 Elm St., Suite 2200
Cincinnati OH  45202
Phone: (513) 721-3330
*zschaengold@rkpt.com*
*mgalasso@rkpt.com*


Alexander J. Durst (0089819)
Paul R. Kerridge (0092701)
Durst Kerridge LL**C**
600 Vine St., Suite 1920

Cincinnati, OH 45202
Phone: (513) 621-4999
Fax: (513) 621-0200
alex@durst.law
paul@durst.law

*Counsel for Plaintiff, the Class, and Subclasses*